# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jerry's Bar, Inc.,            :
           Petitioner       :
           :
      v.                  :    No. 341 F.R. 2014
           :    Submitted: October 17, 2017
Commonwealth of Pennsylvania,    :
           Respondent    :
           :
           :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION BY JUDGE BROBSON**      **FILED: November 9, 2017**


Petitioner Jerry's Bar, Inc. (Taxpayer) petitions for review of an order of the Board of Finance and Revenue, sustaining a decision of the Department of Revenue's (Department) Board of Appeals. The Board of Appeals denied Taxpayer's request for refund of tax payments attributable to the City of Philadelphia sales tax paid on malt beverage (beer) transactions conducted during the period of September 1, 2010, through August 28, 2013. We now affirm.

Taxpayer operates a bar/restaurant in Delaware County. During the time period at issue, Taxpayer purchased beer for resale to its customers through beer distributors located in the City of Philadelphia. When ordering the subject beer, Taxpayer placed orders with beer distributors, and the beer distributors delivered the beer to Taxpayer in Delaware County. In addition to state sales tax, the beer distributors charged and collected City of Philadelphia sales tax from Taxpayer and remitted the tax to the Department. In order to obtain certain manufacturers' beers,

Taxpayer, under the Liquor Code,[1] was required to purchase the beer from a beer distributor that has distribution rights for the area where Taxpayer's establishment is situated. With regard to the transactions at issue, the beer distributors were located in the City of Philadelphia. Had the Liquor Code not required Taxpayer to purchase from permitted beer distributors, Taxpayer would have purchased the beer from beer distributors located outside of the City of Philadelphia, thereby avoiding the 2% City of Philadelphia sales tax.

On September 3, 2013, Taxpayer filed a petition for refund with the Board of Appeals, seeking a refund of $1,778.42 for the City of Philadelphia sales tax. In the course of the proceedings, Taxpayer established proof of payment of the taxes. Taxpayer contended that it purchased the beer for resale. More specifically, Taxpayer asserted that it operates as a retailer in selling beer to its bar customers in Delaware County after purchasing the products from beer distributors located in the City of Philadelphia, and Taxpayer is not the end user or ultimate consumer of the goods purchased. Furthermore, Taxpayer maintained that the beer distributors did not deliver the beer within the City of Philadelphia, and customers consumed the beer outside of the City of Philadelphia. By decision and order mailed November 15, 2013, the Board of Appeals denied relief to Taxpayer.

Taxpayer petitioned the Board of Finance and Revenue for review, again requesting a refund of the City of Philadelphia sales tax and advancing the same arguments as it did before the Board of Appeals. By decision and order mailed June 27, 2014, the Board of Finance and Revenue denied Taxpayer's petition. Taxpayer then petitioned this Court for review.

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 to 10-1001.

On appeal,[2] Taxpayer essentially argues that it is entitled to a refund of the City of Philadelphia sales tax, because Taxpayer purchased the beer outside of the City of Philadelphia for resale to its customers in Delaware County as required by the Liquor Code.[3]

---

[2] Pa. R.A.P. 1571 governs our standard of review in this matter. "Appeals taken from the Board of Finance and Revenue are *de novo* in nature, with no record being certified by the board." *Tool Sales & Serv. Co. v. Bd. of Fin. & Revenue*, 637 A.2d 607, 610 (Pa. 1993), *cert. denied sub nom. Tom Mistick & Sons, Inc. v. Pa.*, 513 U.S. 822 (1994). "Although the Court hears these cases under its appellate jurisdiction, the Court functions essentially as a trial court." *Scott Elec. Co. v. Cmwlth.*, 692 A.2d 289, 291 (Pa. Cmwlth. 1997), *exceptions dismissed*, 704 A.2d 205 (Pa. Cmwlth. 1998). The parties submitted a stipulation of facts on July 26, 2017, pursuant to Pa. R.A.P. 1551(a).

[3] Taxpayer's brief fails to conform to the Pennsylvania Rules of Appellate Procedure in several material and substantial aspects. For instance, under the Pennsylvania Rules of Appellate Procedure, a petitioner's brief shall include, in part, a statement of the questions involved, stating concisely the issues to be resolved; a statement of the case, containing, in part, a procedural history of the case, a brief statement of any prior determination, and a condensed chronological statement of the facts of the case devoid of argument; a summary of the arguments in support of the issues; and an argument section divided into as many parts as there are questions to be argued. *See* Pa. R.A.P. 2111, 2116-2119. Taxpayer's brief is deficient in that its "summary" does not correspond to the issues identified in the "issues" section of the brief (which we deem to be the "statement of questions involved"), the brief is devoid of a statement of the case, and the "argument" section of the brief (entitled "discussion") is not divided into discrete parts addressing the questions presented. Rather, the argument is a mere three pages that, if read favorably to Taxpayer, could be interpreted in touching upon the "issues" raised. In the argument section, however, Taxpayer also complains that the Liquor Code unfairly forces Taxpayer to purchase beer from beer distributors located in the City of Philadelphia. In turn, the City of Philadelphia unfairly imposes its local sales tax on Taxpayer, resulting in a windfall to the City of Philadelphia and a burden on Taxpayer. Taxpayer contends, therefore, that the tax is unconstitutional for a variety of reasons. Taxpayer has not provided any legal support for the issues actually identified in its brief nor the additional issues improperly contained in the argument section of the brief. Thus, Taxpayer has waived the improperly raised constitutional issues that are set forth but undeveloped in the discussion section of Taxpayer's brief. *See Van Duser v. Unemployment Comp. Bd. of Review*, 642 A.2d 544, 548 n.3 (Pa. Cmwlth. 1994) (holding issues not set forth in statement of questions involved are waived); *see also D.Z. v. Bethlehem Area Sch. Dist.*, 2 A.3d 742, 750 n.8 (Pa. Cmwlth. 2010) (holding issue waived where appellant failed to develop legal argument or cite

Under Sections 431(b) and 441(e) of the Liquor Code, *as amended*, 47 P.S. §§ 4-431(b),[4] 4-441(e), Taxpayer can only purchase a manufacturer's beer

relevant legal authority in support of issue). While Taxpayer arguably also has failed to sufficiently develop the issues identified in the issues section of its brief, this Court, nonetheless, will address those issues, as the Board of Finance and Revenue and the Commonwealth adequately developed the law relating to those issues.

[4] Section 431(b) of the Liquor Code provides, in relevant part:

*The board shall issue to any reputable person who applies therefor, and pays the license fee hereinafter prescribed, a distributor's or importing distributor's license* for the place which such person desires to maintain for the sale of malt or brewed beverages, not for consumption on the premises where sold, and in quantities of not less than a case or original containers containing one hundred twenty-eight ounces or more which may be sold separately as prepared for the market by the manufacturer at the place of manufacture. In addition, a distributor license holder may sell malt or brewed beverages in any amount to a person not licensed by the board for off-premises consumption. The sales shall not be required to be in the package configuration designated by the manufacturer and may be sold in refillable growlers. . . .

Except as hereinafter provided, such license shall authorize the holder thereof to sell or deliver malt or brewed beverages in quantities above specified anywhere within the Commonwealth of Pennsylvania, which, in the case of distributors, have been purchased only from persons licensed under this act as manufacturers or importing distributors, and in the case of importing distributors, have been purchased from manufacturers or persons outside this Commonwealth engaged in the legal sale of malt or brewed beverages or from manufacturers or importing distributors licensed under this article. . . .

*Each out of State manufacturer of malt or brewed beverages whose products are sold and delivered in this Commonwealth shall give distributing rights for such products in designated geographical areas to specific importing distributors, and such importing distributor shall not sell or deliver malt or brewed beverages manufactured by the out of State manufacturer to any person issued a license under the provisions of this act whose licensed premises are not located within the geographical area for which he has been given distributing rights by such manufacturer.* In addition, the holder of a distributor license may not sell or deliver malt or brewed beverages to any licensee whose licensed premises is located within

4

from the "distributor" or "importing distributor" (generally referred to herein as beer distributors) licensed to sell that particular beer in Taxpayer's geographic region. As a result of these statutory provisions, Taxpayer maintains that it is required to purchase beer from a beer distributor located in the City of Philadelphia, and, in turn, the City of Philadelphia beer distributor is required to charge local sales tax.[5]

In 1991, the General Assembly enacted the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class (PICA), Act of June 5, 1991, P.L. 9, *as amended*, 53 P.S. §§ 12720.101-.709, so as "to provide a mechanism for cooperation between the Commonwealth and financially

---

the designated geographical area granted to an importing distributor other than the importing distributor that sold the malt or brewed beverages to the distributor. . . .

*When a Pennsylvania manufacturer of malt or brewed beverages licensed under this article names or constitutes a distributor or importing distributor as the primary or original supplier of his product, he shall also designate the specific geographical area for which the said distributor or importing distributor is given distributing rights, and such distributor or importing distributor shall not sell or deliver the products of such manufacturer to any person issued a license under the provisions of this act whose licensed premises are not located within the geographical area for which distributing rights have been given to the distributor and importing distributor by the said manufacturer.* In addition, the holder of a distributor license may not sell or deliver malt or brewed beverages to a licensee whose licensed premises is located within the designated geographical area granted to an importing distributor other than the importing distributor that sold the malt or brewed beverages to the distributor. . . .

(Emphasis added.) Section 441(e) of the Liquor Code provides that "[n]o distributor or importing distributor shall purchase, sell, resell, receive or deliver any malt or brewed beverages, except in strict compliance with the provisions of subsection (b) of [S]ection 431 of [the Liquor Code]."

[5] It is unclear if Taxpayer is able to purchase any of its beer from beer distributors located outside of the City of Philadelphia or if it is only certain manufacturers' beers that Taxpayer must purchase from beer distributors located within the City of Philadelphia. This nuance, however, is not relevant to the appeal now before this Court.

5

distressed cities of the first class"—*i.e.*, the City of Philadelphia—for the purpose, in part, of fostering fiscal integrity for the City of Philadelphia. *City of Philadelphia v. Cmwlth.*, 838 A.2d 566, 571 n.1 (Pa. 2003) (citing Section 102 of PICA, 53 P.S. § 12720.102). Chapter 5 of PICA[6] authorizes the City of Philadelphia to impose sales, use, and hotel taxes at a rate of 0.5% or 1% and makes clear that the imposition of such taxes under PICA is in addition to any tax imposed by the Commonwealth pursuant to Article II of the Tax Reform Code of 1971 (Tax Reform Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7201-7282. The City of Philadelphia imposes a sales tax under Chapter 5 of PICA at a rate of 1%.[7] *See* 61 Pa. Code § 60.16(12). "Except for differing situs provisions under [S]ection 504" of PICA, 53 P.S. § 12720.504, the provisions of Article II of the Tax Reform Code apply to taxes imposed under Chapter 5 of PICA.

With regard to the imposition of sales tax on retail sales, Section 504(a) of PICA,[8] 53 P.S. § 12720.504, provides:

> For purposes of this chapter and except as otherwise provided in this subsection, *a sale at retail shall be deemed to be consummated at the place of business of the retailer* unless the tangible personal property sold is delivered by the retailer or his agent to an out-of-State destination or to a common carrier for delivery to an out-of-State

---

[6] Sections 501-509 of PICA, 53 P.S. §§ 12720.501-.509.

[7] It is unclear why the Board of Finance and Revenue cites Section 3152-B of the Second Class County Code, Act of July 28, 1953, P.L. 723, added by the Act of December 22, 1993, P.L. 529, as the authority for the imposition of a 2% sales tax in the City of Philadelphia. The Second Class County Code applies to second class and second class A counties and does not apply to Philadelphia County or the City of Philadelphia. *See* Section 102 of the Second Class County Code, *as amended*, 16 P.S. § 3102. This apparent misstatement does not affect our analysis of the matter.

[8] Section 504 of PICA was repealed, in part, by the Act of June 22, 2001, P.L. 353, insofar as it was inconsistent with the addition of Section 202-A of the Tax Reform Code, added by the Act of June 22, 2001, P.L. 353, 72 P.S. § 7202-A, pertaining to situs for construction materials.

destination or the United States mails for delivery to an out-of-State destination. In the event a retailer has more than one place of business in this Commonwealth which participates in the sale, the sale shall be deemed to be consummated at the place of business of the retailer where the initial order for the tangible personal property is taken, even though the order must be forwarded elsewhere for acceptance, approval of credit, shipment or billing. A sale by a retailer's employee shall be deemed to be consummated at the place of business from which that employee works.

(Emphasis added.) The Department's regulation pertaining to local sales, use, and hotel occupancy tax, which the Department promulgated to administer the provisions of Chapter 5 of PICA, provides:

> *Point of sale.* Local sales tax is imposed at the point of sale. A sale of property or a service delivered to a location within this Commonwealth is deemed to occur at the place of business of the retailer. A sale of property or a service delivered by the retailer or its agent to an out-of-State destination is subject to neither the State nor the local tax. The local tax is in addition to the State tax if a sale is deemed to have occurred in a taxable county. There are no transactions which are only subject to the local tax.[9]

61 Pa. Code § 60.16(11). This is opposite of the State sales tax, which is imposed based upon its point of destination. 61 Pa. Code § 32.5. State sales tax is imposed where the "delivery of taxable property or service is made to locations within this Commonwealth." *Id.*

---

[9] Pursuant to Section 506 of PICA, 53 P.S. § 12720.506, the rules and regulations promulgated under Section 270 of the Tax Reform Code, 72 P.S. § 7270, are applicable to the taxes imposed by Section 503 of PICA "insofar as such rules and regulations are consistent with [S]ection 503," and the Department is charged with administering and enforcing Chapter 5 of PICA.

7

In an apparent effort to provide more revenue for the City of Philadelphia, the General Assembly in 2009 amended the Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, *as amended*, to allow the City of Philadelphia to impose an additional 1% sales tax.[10] Pursuant to Section 1003 of the Municipal Pension Plan Funding Standard and Recovery Act, the additional authorized sales tax shall be paid to and administered by the Department in the same manner as the sales tax imposed under Chapter 5 of PICA. *Id.* Thus, the General Assembly in 2009 essentially increased the City of Philadelphia's sales tax to a rate of 2%.

Applying the law to the facts of this case, we agree with the Commonwealth that Taxpayer's purchases are subject to City of Philadelphia sales tax. The beer distributor, located within the City of Philadelphia, sold beer to Taxpayer and delivered it to Taxpayer at a location within the Commonwealth of Pennsylvania. These facts alone establish that imposition of the tax is proper. The fact that a purchaser is not located within the City of Philadelphia would only be relevant for purposes of sales tax if the purchaser were located outside of Pennsylvania. Section 504(a) of PICA. Here, Taxpayer is not located outside of Pennsylvania, and, therefore, the sales are subject to City of Philadelphia sales tax.

Moreover, the fact that Taxpayer purchased the beer for resale to its customers is also irrelevant. The Department's regulation pertaining to sales for resale exempts certain transactions for purposes of resale, but it specifically excludes from the exemption "the sale of malt or brewed beverages or liquor to a person who

---

[10] *See* Section 1003 of the Municipal Pension Plan Funding Standard and Recovery Act, added by the Act of September 18, 2009, P.L. 396, 53 P.S. § 895.1003.

is a retail dispenser[11] or a holder of a retail liquor license under [t]he Liquor Code."[12]  61 Pa. Code § 32.3(a)(1)(i) (footnote added).

Accordingly, we affirm the order of the Board of Finance and Revenue.[13]

_____
P. KEVIN BROBSON, Judge

_____

[11] A "retail dispenser" is

> any person licensed to engage in the retail sale of malt or brewed beverages for consumption on the premises of such licensee, with the privilege of selling malt or brewed beverages in quantities not in excess of one hundred ninety-two fluid ounces in a single sale to one person, to be carried from the premises by the purchaser thereof.

Section 102 of the Liquor Code, *as amended*, 47 P.S. § 1-102.

[12] 61 Pa. Code § 32.3(a)(1)(i) provides:

> (a) Sales for resale exempt.  A transfer for a consideration of the ownership, custody or possession of tangible personal property or the rendition of taxable services for the purpose of resale is exempt from tax.  Transfer for the purpose of resale shall include the following:
>
> > (1) The transfer of tangible personal property or rendition of taxable services on, or purchase of, repair parts for property which is:
> >
> > > (i) To be sold, rented or leased in the regular course of business. *However, the sale of malt or brewed beverages or liquor to a person who is a retail dispenser or a holder of a retail liquor license under [t]he Liquor Code . . . does not qualify for the resale exemption.*

(Emphasis added.)

[13] Taxpayer's argument suggests that it is attempting to challenge the Liquor Code and its accompanying regulations limiting a beer distributor's ability to sell a manufacturer's beer to a licensee located outside of the beer distributor's specific geographic area, because the effect is to (1) prohibit a licensee from purchasing a manufacturer's beer from a distributor whose geographic area does not include the licensee's location; and (2) subject a licensee to higher sales tax depending upon the location of the beer distributor in whose geographic area the licensee is located.  To the extent that Taxpayer is attempting to assert such a challenge, an appeal before the Board of Finance and Revenue is not the proper vehicle.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jerry's Bar, Inc.,               :
               Petitioner     :
                          :
        v.                :    No. 341 F.R. 2014
                          :
Commonwealth of Pennsylvania,    :
               Respondent    :

## O R D E R

AND NOW, this 9th day of November, 2017, the order of the Board of Finance and Revenue, sustaining a decision of the Department of Revenue's Board of Appeals, is AFFIRMED.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

_____
P. KEVIN BROBSON, Judge